OPINION
Plaintiffs-appellants Louis Mastro and Michael Mastro ("the Mastros") bring this appeal from the judgment of the Court of Common Pleas of Marion County denying injunctive relief.
On May 3, 1979, Intercity sold 6.054 acres ("Tract A") of the original parcel to Grace Road Associates. Intercity retained .771 acres ("Tract B"). At that time, the parties entered into an easement that stated in pertinent part:
 D. Notwithstanding the division of the Property and the eventual owners of the property, Declarants desire to provide for a common area easement for parking, ingress, egress and utilities for the entire Property.
 Statement of Declaration
 1. Declarants do hereby grant, declare, set forth and establish a permanent non-exclusive easement for ingress-egress, parking and utilities over, on and through the entire Property (except as hereinafter set forth), which easement shall be in favor of the various tracts of land [known as Tracts A and B], and as set forth on Exhibit "C".
 * * *
 3. Subject to the provisions and restrictions hereinafter contained, each parcel may be developed and improved as provided on Exhibit "C". To the extent the particular parcel has parking, ingress and egress facilities, the remaining parcel shall have the right and enjoyment to use said facilities, in common, as hereinafter provided. The use and enjoyment shall extend to the owner, its lessees, assignees, successors, agents, employees, visitors and licensees. Notwithstanding the right to develop and construct improvements, no fence or obstruction shall be permitted to separate the parcels from each other, nor shall the plot plan configuration, as provided on Exhibit "C", be modified to reduce, change, affect or interfere with ingress, egress, parking, common areas, sidewalks, etc., as shown on Exhibit "C". * * *
 4. Notwithstanding anything contained in this Declaration, [Tract B] shall be subject to the following restrictions. In the event of the violation of any of the following restrictions, then the owner and/or lessee of the other parcel shall have the right to declare this easement agreement null and void. Said restrictions are as follows:
 * * *
 B. Maximum building size shall not exceed six thousand five hundred (6,500) square feet.
 * * *
 8. The easements and rights therein shall be deemed covenants running with the land, and shall inure to the benefit of, and be binding upon, the Declarants, their nominees, successors and assigns.
Easement, 1-2. The easement is necessary because Tract B is landlocked and the only access is by crossing Tract A.
In July 1979, Intercity sold Tract B to Johnson et al. and a restaurant was constructed on the property. The restaurant was sized at 6,580 square feet, which is slightly larger than that permitted by the easement. However, Grace Road Associates never complained about the size and proceeded to continue with the easement. In 1985, the Mastros purchased Tract B and began to operate a restaurant on the site. No changes were made to the site at the time and both the owners of Tract A and the Mastros continued to abide by the easement agreement. In 1996, the Mastros decided to expand the restaurant, but ceased the plans when the owners of Tract A would not waive the limitation. The Mastros then spent $500,000 renovating the building, including the addition of a new brick facade and a reconfigured entry way. The renovation added a minimal amount of square footage to the building.[1] No objection was raised by the owners of Tract A, and the Mastros continued to pay the common area maintenance fees, which were accepted by the owners of Tract A.
In September 1996, Tract A was purchased by FM Investments, LTD. ("FM"), owned by Louis Fisher and Thurman Mathews. After the purchase, FM notified the Mastros that the easement was null and void because the restaurant was too large. Thus, FM claimed that the Mastros no longer had cross-parking rights, which placed them in violation of city zoning requirements. FM offered to resolve the problem by selling the property behind the restaurant to the Mastros at a cost of $97,000. FM also notified that they would be fencing off the area in front of the restaurant on Tract A so that Mr. Mathews, a Ford automotive dealer, could put his car lot there.
On December 5, 1996, the Mastros filed a complaint requesting injunctive relief ordering Mathews to remove the fence, a declaratory judgment that the easement was valid, and for damages in the amount of $50,000 resulting from the breach of the easement agreement, plus attorney fees. An answer was filed on January 14, 1997, denying the allegations based upon the argument that the easement was null and void. FM also filed a counter-claim requesting declaratory judgment that the easement was null and void and granting judgment in the amount of at least $25,000, plus attorney fees. An answer to the counterclaim was filed on January 27, 1997. On February 3, 1997, the trial court ordered that FM not interfere with the Mastros' restaurant, but refused to order that the fence be removed.
From April 3-6, 2000, a jury trial was held. The jury returned a verdict in favor of the Mastros. In response to the interrogatories, the jury unanimously found the easement to be valid and that FM had violated the easement by erecting the fence and placing a new car lot in the northern part of Tract B. The Mastros then filed a motion for a permanent injunction on June 30, 2000. A hearing was held on the matter on August 21, 2000. On January 4, 2001, the trial court made its findings and its opinion for the record. The trial court affirmed the findings of the jury that the easement was valid and that FM had violated it. However, the trial court concluded that the Mastros could have had monetary damages instead of an injunction, so it denied the injunction and granted no relief to the Mastros.[2] A judgment entry denying the motion for permanent injunction was entered on January 29, 2001. It is from this judgment that the Mastros appeal.
The Mastros make the following assignments of error.
 The trial court erred in denying injunctive relief because when a right of way, arising out of an agreement between adjacent land owners is interfered with, injunctive relief is the proper mode of enforcing the agreement.
 The fence and car lot maintained by defendant Mathews constitute a continuing trespass as a matter of law against which injunctive relief is particularly appropriate. The trial court erred as a matter of law in failing to so find.
 The trial court abused its discretion in failing to grant injunctive relief.
FM filed a cross-appeal and raised the following assignment of error.
 The trial court erred when it overruled [FM's] motion for directed verdict on the grounds that the easement was null and void where the evidence showed unequivocally that appellants had violated the 6,500 square foot maximum building size on Tract B.
We will address the cross-appeal first since it speaks to the verdict itself. In the cross-appeal, FM claim that the trial court should have granted its motion for a directed verdict finding the easement agreement null and void as a matter of law. The easement agreement provides that the Mastros' restaurant will not exceed a size of 6,500 square feet. If the building does, the owner of Tract A has the right to declare the easement null and void. FM claim that since the square footage of the building exceeds 6,500 square feet, that the easement if null and void. The jury and the trial court disagreed and found the easement to be valid.
"The standard of review for the grant or denial of a motion for directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant." Mkparu v. Ohio Heart Care Inc. (1999), 138 Ohio App.3d 7, 27, 740 N.E.2d 293, 307. In this case, the evidence indicates that the violation existed from the beginning. The building was always larger than the 6,500 square feet permitted by the easement and none of the prior owners complained about the variance. Additionally, FM purchased Tract A subject to the easement with full knowledge that the building was slightly over the easement limitation. Although the building was remodeled, the actual size of the building was only changed because a row of brick was added to the outside of the building to improve its appearance. There was no change to the actual usable size of the building, which was below the 6,500 limitation. It would seem that the purpose of the limitation was to prohibit the restaurant from getting bigger and thus requiring more parking that it did at that time. However, the additional square footage resulting from the remodeling did not increase the capacity of the restaurant in any way and did not change the amount of parking either available or necessary. Thus, reasonable minds could conclude that any violation was either waived by the owner since Tract A was purchased with full knowledge of the variance or that the violation was de minimus in nature and did not require invalidation of the easement. The cross-appeal is overruled.
The three assignments of error raised by the Mastros all claim that the trial court should have granted the injunction. Thus, we will address them together. The Mastros argument is that the fenced car lot is a continuing breach of the easement agreement. FM's response is that since the Mastros can be monetarily compensated, they are not entitled to an injunction. In the complaint, the Mastros asked for specific performance of the easement agreement and requested damages for the prior breach.
The Ohio Supreme Court has consistently held that when a right of way, arising out of an easement between adjacent landowners is interfered with, injunctive relief is the proper mode of enforcing the agreement.Goldberger v. Bexley Properties (1983), 5 Ohio St.3d 82, 448 N.E.2d 1380. This court has also found an injunction the proper method for enforcing an agreement involving land. Nedolast v. Frankart (Oct. 20, 1999), App. No. 13-99-19, WL 955491, unreported. Here, the jury found that the easement was valid and that FM were violating the easement by installing the fence and using all of the parking spaces to the north of the restaurant for a car dealership. The trial court determined that these changes were permanent in nature and denied the motion for the injunction, which would have required specific performance of the agreement. However, the evidence shows that the changes were not permanent in nature. The testimony was that the fence could be removed and the cars can obviously be moved. By denying the injunction, the trial court is permitting the violation of the easement to continue and basically reducing to nothing the value of the easement to the Mastros without compensation for the loss.
There is no question that the Mastros have been damaged by the breach of the easement. Both the expert for the Mastros and the expert from FM testified that the breach caused the restaurant to be in a less than average location and reduced the visibility of the restaurant from the road. Generally, the owner of land burdened by an easement "may use the land for any purpose that does not interfere with the easement."Cincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. of Commrs. (2001), 141 Ohio App.3d 803, 753 N.E.2d 884. However, if the owner of that land does interfere with the easement, the appropriate remedy is an injunction when the interference would constitute a continuing trespass on the property subject to the easement. Langhorst v. Riethmiller
(1977), 52 Ohio App.2d 137, 368 N.E.2d 328. An injunction is made appropriate because the failure to grant one would permit the trespasser to prevent the other party from enjoying the benefit of the easement.Id.
Here, there is no question that by permitting the fence and car lot to remain, FM would continue to violate the easement. There is also no question that doing so will continue to prevent the Mastros from enjoying the benefit of the easement. The continued trespass will also continue to affect the business of the Mastros and will increase the damages suffered. Thus, an injunction is not only the appropriate remedy, but the only remedy that will prevent the occurrence of future damages to the Mastros by the continued breach of the easement by FM. Therefore, the trial court abused its discretion when it denied injunctive relief to the Mastros. The assignments of error of the Mastros are well-taken.
The judgment of the Court of Common Pleas of Marion County is reversed and the cause is remanded for further proceedings.
Judgment reversed and cause remanded.
SHAW and HADLEY, JJ., concur.
[1] The difference in footage arose because of the width of the brick facing, not due to any actual change in the usable area inside the building. The interior square footage of the building is 6,196 square feet.
[2] The trial court basically denied any recovery to the Mastros, either through injunctive relief or monetary damages on the basis that monetary damages were not requested.