OPINION
{¶ 1} Defendants-appellants, Donald and Vivian Domokur, appeal from a Mahoning County Common Pleas Court decision that 1) granted an injunction in favor of plaintiffs-appellees, Gary and Charlene Baker, Kenneth and Lorraine Shively, and Richard and Kay Murwin; 2) ordered appellants to remove a sea wall and retaining walls that obstruct a 25-foot easement for the benefit of appellees; and 3) ordered appellants to proceed with remedial work recommended by Terrence R. Hohnhorst, a consulting civil engineer.
I. Background
 {¶ 2} Appellees are three separate families who own three adjacent plots of land in Lake Milton, Ohio. Each plot of land is used for residential purposes, and is nearby, but not on, the waterfront of Lake Milton. Appellants own a residential plot of land near appellees' land on the waterfront of Lake Milton.
 {¶ 3} Both appellees' and appellants' land traces back to Augusta Jones. In 1914, Jones conveyed 77 acres of land to the City of Youngstown for the purposes of establishing a reservoir, which has developed into what we now know as Lake Milton. Jones reserved for her heirs and assigns, the right of ingress to, and egress from, the reservoir. The pertinent language from the conveyance reads as follows:
 {¶ 4} "The [G]rantor reserves and said Grantee hereby agrees to grant to said Grantor, her heirs and assigns forever, for them and their guests, the right of ingress to and egress from, the waters of the Mahoning River and any reservoir hereafter to be constructed [Lake Milton] by said Grantee, its successors or assigns, in said reservoir basin, over and across any portion of the lands hereby conveyed and other lands of said Grantee intervening between said river and its remaining lands of said Grantor, and the further right to use said waters for domestic, agricultural, fishing and pleasurable purposes, other than for commercial purposes, together with all other rights of a riparian owner in and to said waters; said reserve rights to be appurtenant to each and every part of the remaining lands of said Grantor, and to be consistent with the uses of said reservoir by said City."
 {¶ 5} This general easement reserved, for Jones' heirs and assigns, the right to cross the newly transferred public land that intervened between Jones' land and the water. The general reservation language is now included in the title guarantee for all of the lots created from Jones' land, including appellees' and appellants' land.
 {¶ 6} Jones also transferred a plot of land, known as the Orchard Place plat, which was split into ten different lots. Appellees' property is included in this plat. Lots three, four, five, six, and seven were later replatted to create three larger lots, now labeled lots three, five, and seven, which currently belong to appellees. The plat designated a 25-foot private drive, labeled: "Not a public highway[,] Private drive for benefit of abutting lands." The drive abuts the Orchard Place lots, and runs up to the water's edge. Jones therefore created a specific easement — a direct right of way to the lake — for the benefit of the owners of the land abutting the drive.
 {¶ 7} Appellees' land abuts the specific easement, and was portrayed in the document granting the specific easement. Appellants' land also abuts the specific easement, but appellants'plot of land was not portrayed in the document granting the specific easement.
 {¶ 8} Appellees contend that they were granted a specific easement, or a direct right-of-way to the lake. Appellees further contend that appellants do not have a right to use the specific easement because appellants' land was not portrayed in the original plat map. Appellees concede that appellants were granted a general easement to cross over public land to get to the water. However, appellees assert that the general easement applies to the 68 feet of public land directly in front of appellants' property between appellants' property and Lake Milton, and not to the specific 25-foot easement portrayed for the benefit of the abutting lands of Orchard Place. Attorney Scott D. Hunter, a licensed title insurance agent and owner of a land title agency, testified that appellants "don't have any right of access to the private drive because the property they currently own was not defined on this plat at the time of its recreation." (May 25, 2005 Tr. 26).
 {¶ 9} Appellants, on the other hand, contend that they have property rights in the 25-foot private easement because their land abuts the easement, and the document specified that the 25-foot easement was for the benefit of abutting lands. Appellants offered no expert testimony to support their argument.
 {¶ 10} In 1988, Lake Milton was transferred from the City of Youngstown to the Ohio Department of Natural Resources (ODNR), becoming Ohio's 72nd state park. Pursuant to R.C. 1541.03, "All lands and waters dedicated and set apart for state park purposes shall be under the control and management of the division of parks and recreation, which shall protect, maintain, and keep them in repair." Thus, the public land between lakefront lots and the waters of Lake Milton are under the control and management of the ODNR division of parks and recreation.
II. Dispute
 {¶ 11} Appellants decided to make improvements to the public land between their lakefront property and the water. Pursuant to the Lake Milton State Park of Mahoning County Lakeshore Management Plan, any individual who wished to change or alter land contours, landscape, or build upon government property had to obtain written permission from the Lake Milton Park Manager. Appellants obtained a permit from the state park manager to construct a sea wall and retaining walls on the state land in front of their property for the purpose of erosion control. Appellants began construction in the spring of 2001 and properly displayed the permit in public view. When the project was completed in the summer of 2002, the park manager and his assistant inspected the premises and found the construction to be consistent with the issued permit. Appellants have never been cited or sanctioned for any violations of the Lakeshore Management Plan.
 {¶ 12} However, the park manager and appellants seemed to be unaware that there was a 25-foot easement running along the easterly boundary line of appellants' lot. Before issuing the permit, the park manager did not require a survey of the property to be conducted to determine over what portion of land the retaining walls and sea wall could extend. Consequently, appellants put up retaining walls and a sea wall on the public land in front of the 25-foot specific easement. The retaining walls and sea wall extend 19 feet across the 25-foot specific easement, arguably obstructing appellees' right of way to the water.
 {¶ 13} Appellees filed their original complaint on April 8, 2002, alleging that the retaining walls and sea wall constructed by appellants trespassed onto the specific easement that was created for their benefit. Appellees asserted they had no adequate remedy at law, and therefore requested that appellants be enjoined from maintaining the retaining walls and sea wall that encroached upon the specific easement. Appellees further requested that appellants be directed to remove the encroachment, and to restore the easement to its original condition.
 {¶ 14} A hearing was held before a magistrate. On March 1, 2004, after reviewing evidence and hearing testimony, the magistrate found that "it is undisputed that the construction by Defendants has encroached upon the 25-foot right of way from Orchard Place to the lake," however "it is disputed that access to the lake within the right of way is obstructed." Therefore, the magistrate ordered the parties to schedule another hearing to provide evidence "as to a possible means, including cost estimates, to access the lake through the right of way." The magistrate noted that appellees "are entitled to no easier access to the lake than existed prior to the encroachment upon the right of way" by appellants. The trial court adopted the magistrate's decision on March 18, 2004.
 {¶ 15} On May 14, 2004, appellees submitted an expert report by Terrence Hohnhorst, a consulting civil engineer. The report evaluated the obstructions and suggested remedies for eliminating the obstructions. Specifically, the report recommended that the entire construction be removed from the 25-foot easement, that the remaining slope be reshaped and graded to fit as one slope, and that the slope be matted and reseeded or sodded.
 {¶ 16} Appellees then filed an amended complaint adding the State of Ohio via ODNR as a defendant. In addition, appellees alleged that the sea wall and retaining walls pose an unreasonable risk of harm, and asked that ODNR be directed to grant permission to remove the obstructions on the easement.
 {¶ 17} The evidentiary hearing was held before the magistrate on May 25, 2005. Appellees presented reports and testimony from two expert witnesses and several lay witnesses. Appellants presented testimony from one lay witness. The State of Ohio stated that the parties would have permission and approval to enter upon the property to conduct the remediation.
 {¶ 18} The magistrate filed a decision on July 18, 2005, finding that appellants did not have property rights allowing them to utilize the 25-foot private drive. The magistrate therefore ordered appellants to cease and desist from obstructing the right-of-way. The magistrate also found that Hohnhorst's recommendations were reasonable and necessary and appeared to be the most economical means of remediation. Therefore, the magistrate ordered appellants to remove the obstructions within 60 days and to proceed with Hohnhorst's recommendations.
 {¶ 19} Appellants filed a request for findings of fact and conclusions of law, claiming that the magistrate's decision was ambiguous and did not set forth specific findings of fact or conclusions of law. The trial court, finding no objections had been filed, adopted the decision on August 17, 2005.
 {¶ 20} Appellants filed a timely notice of appeal on September 15, 2005.
 {¶ 21} Appellants assert two assignments of error, the first of which states:
 {¶ 22} "THE TRIAL COURT HAS ELEVATED THE APPELLEES' RIGHT OF ACCESS TO A FEE-SIMPLE INTEREST, GRANTING APPELLEES RIGHTS WHICH FAR EXCEED MERE ACCESS."
 {¶ 23} When reviewing the grant of an injunction by a trial court, this court's standard of review is abuse of discretion.Collins v. Moran, 7th Dist. No. 02 CA 218, 2004-Ohio-1381, at ¶ 17. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 24} A permanent injunction is an equitable remedy only to be granted where there is irreparable injury and no adequate remedy at law such as monetary damages. Martin v. Lake MohawkProperty Owner's Ass'n, 7th Dist. No. 04-CA-815, 2005-Ohio-7062, at ¶ 48. A party seeking a permanent injunction must prove by clear and convincing evidence that the injunction is necessary to prevent irreparable harm and that the party does not have an adequate remedy at law. Procter Gamble Co. v. Stoneham
(2000), 140 Ohio App.3d 260, 267-68, 747 N.E.2d 268.
 {¶ 25} Before reaching the merits of appellants' argument, we must address a preliminary matter. The magistrate issued his decision on July 18, 2005. It did not contain specific findings of fact and conclusions of law. Appellant subsequently filed a motion for findings of fact and conclusions of law. The court never ruled on this motion. Instead, the trial court issued its judgment adopting the magistrate's decision on August 17, 2005. The court noted in its judgment that no written objections had been filed.
 {¶ 26} Civ.R. 53(E)(2) provides that if a party makes a request for findings of fact and conclusions of law after the magistrate issues his or her decision, the magistrate shall include the findings of fact and conclusions of law in an amended magistrate's decision. Furthermore, the findings of fact and conclusions of law "shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party timely and specifically objects to that finding or conclusion as required by Civ.R. 53(E)(3)." Civ.R. 53(E)(2). Therefore, generally, if a party fails to object to findings of fact or conclusions of law in a magistrate's decision, they waive those issues on appeal.
 {¶ 27} But in this case, appellants never had the opportunity to file objections because the magistrate never addressed their motion for findings of fact and conclusions of law as required by Civ.R. 53. "If a party makes a request for findings of fact and conclusions of law under Civ. R. 52, the time for filing objections begins to run when the magistrate files a decision including findings of fact and conclusions of law." Civ.R. 53(E)(3)(a). Since the magistrate never filed findings of fact and conclusions of law, appellants were never provided with the chance to file objections. While the magistrate's decision is dated July 18, 2005, the docketing statement reveals that copies of the decision were not issued until August 2, 2005. Thus, appellants did not receive notice of the decision until August 2, 2005, at the earliest. Appellants then filed their motion for findings of fact and conclusions of law on August 16, 2005. The court adopted the magistrate's decision the next day. Since, neither the magistrate nor the court overruled appellants' motion, they were still waiting for a ruling on their motion when the trial court adopted the magistrate's decision.
 {¶ 28} Thus, we will address their arguments as if they had objected in the trial court.
 {¶ 29} Appellants first argue that appellees should have brought an action solely in damages alleging a deprivation of property rights, and that permanent injunctive relief and an order to remove the obstruction is a severe remedy, especially considering the significant expense they incurred in constructing the sea wall and retaining walls.
 {¶ 30} Appellees argue, however, that obstructing an easement is unlawful, and injunctive relief is an appropriate remedy. SeeCarroll v. Bear (Sept. 7, 1994), 2d Dist. No. 93-CA-80. The law is well settled that injunctive relief is available to the owner of an easement against an unwarranted interference with an obstruction of the easement by the owner of the fee. Langhorstv. Riethmiller (1977), 52 Ohio App.2d 137, 141, 368 N.E.2d 328. In Langhorst, the court affirmed the grant of injunctive relief, stating: "It is difficult to perceive of anything that would more clearly obstruct an easement for ingress and egress than the placement of a fence down the middle of the easement or on the easement property line completely excluding appellee from access to the easement." Id. at 139. It found that because the owner of the easement would not be able to enjoy her easement unless the trial court granted injunctive relief, such relief was appropriate. Id. at 141.
 {¶ 31} In the instant case, the 25-foot easement is appellees' only way to reach Lake Milton without crossing private property. Here, like in Langhorst, appellants have arguably completely excluded appellees from accessing Lake Milton. Appellees presented evidence that appellants have taken away their right of way to the water by obstructing a large portion of the easement with a sea wall and retaining walls. Hohnhorst testified that before the construction, the easement was passable by foot to access the lake. (Apr. 15, 2003 Tr. 35). Hohnhorst later testified that appellants' subsequent construction "absolutely is an obstruction. It does not allow any traversing for any normal — normal-abled human being." (May 25, 2005 Tr. 87).
 {¶ 32} Appellees also presented evidence that the remaining few feet of unobstructed land is impassible due to the improvements made by appellants. Hohnhorst testified that a serious erosion problem is starting as a result of the improvements made by appellants. (May 25, 2005 Tr. 78-84). Hohnhorst testified that the retaining wall is rechanneling the surface water, and as a result, a gully has formed in the few remaining unobstructed feet of the easement. (May 25, 2005 Tr. 78-84). The gully is currently five feet deep, and Hohnhorst testified that the situation will worsen over the years. (May 25, 2005 Tr. 76-77). Therefore, Hohnhorst testified that the formation of the gully has caused the remaining unobstructed portion of the easement to become impossible to pass by foot. (May 25, 2005 Tr. 85). Thus, because the evidence demonstrated that appellants have completely obstructed appellees' right of way, there are no appropriate remedies at law other than injunctive relief.
 {¶ 33} Appellants next argue that the sea wall and retaining walls on the easement do not interfere with appellees' actual use of the right of way. Appellants note that an easement is an interest in property expressed in terms of use. An easement is "the grant of a use on the land of another." (Emphasis added.)Alban v. R.K. Co. (1968), 15 Ohio St.2d 229, 239 N.E.2d 22. The owners of an easement cannot even "prevent a trespasser from using the land if their right of way is not impeded." Lasiewskiv. Landen Farm Community Services Ass'n., Inc. (June 8, 1992), 12th Dist. No. CA91-12-095. Therefore, appellants argue that an easement is taken from the owner only when the adverse party interferes with the owner's actual use of the easement. Thus, the issue becomes whether the obstructions interfere with appellees' actual use of the easement.
 {¶ 34} Appellants argue that the obstructions do not interfere with appellees' right of way. The magistrate stated that appellees are entitled to no better access or use of the easement than they had before the construction. Appellants contend that the only way in which appellees used the easement was by walking over the easement to access the lake. Thus, appellants assert that appellees are in no worse of a position now than they were before the sea wall and retaining walls were constructed upon the easement. Specifically, appellants testified that the easement was so steep before the obstructions that it was virtually impassible. Further, appellants contend that three feet remains unobstructed at the top of the easement, and twelve feet remain unobstructed at the bottom of the easement. Therefore, appellants argue that appellees have room to build a standard three foot wide stairway over the easement to gain access to the lake.
 {¶ 35} For support, appellants cite to this court's decision in Benninghoff v. Skinner (1938), 63 Ohio App. 184,25 N.E.2d 948. They allege that it stands for the proposition that a defendant should not be required to remove an obstruction over an easement when the obstruction does not entirely block the right-of-way held by the plaintiffs. However, the obstruction of the easement was not the main issue in Benninghoff. This court instead focused on whether the plaintiffs actually had an easement over the disputed property. After concluding that they did, the court noted that the trial court had found that it would not be proper and equitable under the circumstances to require the defendant to remove the obstruction that he had erected upon the right-of-way since it did not entirely obstruct the right-of-way and enough of the right of way remained unobstructed to afford reasonable means of ingress and egress. Id. at 192. This court noted that the plaintiffs did not appeal from this order and, therefore, concluded that the plaintiffs were satisfied with that order. Id. Thus, we enjoined the defendant from further obstructing the easement.
 {¶ 36} Appellants analogize the case at bar to the situation in Benninghoff, arguing that the sea wall and retaining walls do not entirely obstruct appellees' right-of-way to the lake. Therefore, appellants argue that they should not be compelled to remove the retaining walls and sea wall that obstruct the easement.
 {¶ 37} But Benninghoff does not stand for the proposition that appellants cite it for and, importantly, is not analogous to the situation at bar. The evidence appellees presented demonstrated that the obstructions have completely inhibited their access to the lake. The easement before the improvements was a steep slope covered with vegetation. Appellees concede that before the easement was obstructed, access to the lake was difficult, but accessible. Hohnhorst testified that before the construction, the easement was still passable. (Apr. 15, 2003 Tr. 35). With the addition of the sea wall and retaining walls, Hohnhorst testified that the easement is impassible. (May 25, 2005 Tr. 87). Hohnhorst testified that the concrete slabs and small rocks that make up the retaining walls create an absolute obstruction. (May 25, 2005 Tr. 102). The concrete slabs are positioned at a very steep angle, and the small, loose rocks could cause someone walking over them to easily slip. (May 25, 2005 Tr. 105-106).
 {¶ 38} As stated above, Hohnhorst also testified that as a result of the improvements made by appellants, the erosion problem has worsened, causing a five foot deep gully to form in the few remaining unobstructed feet of the easement. (May 25, 2005 Tr. 78-84). This has caused the remaining unobstructed feet of the easement to become impassible by foot. (May 25, 2005 Tr. 85). Further, Hohnhorst testified that building a staircase to the water, as suggested by appellants, would be costly and difficult, if not impossible, to build with the current obstructions covering the easement. (May 25, 2005 Tr. 112-114).
 {¶ 39} Given the evidence presented, appellants have completely inhibited appellees' use of their easement. Thus, the trial court did not err in ordering appellants to remove the construction that is obstructing appellees' right-of-way to Lake Milton.
 {¶ 40} Appellants next argue that the case evolved from a trespass action into one involving erosion control, engineer remediation, and shoreline safety. As a result, appellants argue that the order to remove the obstructions and regrade and reseed the land is unreasonable and goes beyond the scope of the case.
 {¶ 41} The testimony presented at the hearing revealed that the construction upon the easement has caused the easement to become dangerous and virtually impossible to pass. Although there was some mention of the safety and proper construction of the retaining walls and sea wall, the testimony and evidence was mainly presented to show that the easement has been completely obstructed.
 {¶ 42} It should be noted that the purpose of the second hearing was to determine the extent of the obstruction, and present possible alternative solutions to the problem. Appellees presented evidence from an expert witness that the entire easement has been obstructed, and proposed a possible solution. The solution entails removing the improvements made upon the easement, regrading the land so that it is an even slope, and planting vegetation. This would put appellees in no better position than they were before the improvements were made. Appellants, on the other hand, provided no expert witness to testify regarding the extent of the obstruction, and offered no alternative solutions to the problem.
 {¶ 43} Based on the above analysis, we cannot conclude that the trial court abused its discretion. The decision returns appellees to the position that they were in prior to appellants' construction of the sea and retaining walls. Accordingly, appellants' first assignment of error is without merit.
 {¶ 44} Appellants' second assignment of error states:
 {¶ 45} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADOPTING TWO MAGISTRATE'S ORDERS OF MARCH 1, 2004 AND JULY 15, 2005, WITHOUT MODIFICATION, WHICH CONFLICT AND CONTAIN INTERNALLY INCONSISTENT FINDINGS AND CONCLUSIONS."
 {¶ 46} Appellants argue that the magistrate's March 2004 and July 2005 decisions were inconsistent. Therefore, appellants argue that the trial court erred in adopting these inconsistent decisions.
 {¶ 47} Appellants assert that when adopting the magistrate's July 2005 decision, the trial court was bound to adhere to the law of the case. The law of the case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3, 462 N.E.2d 410. Appellants argue that the July 2005 decision directly contradicts the March 2004 decision. Therefore, appellants argue that the trial court failed to adhere to the law of the case.
 {¶ 48} First, appellants assert that the March 2004 decision adopted by the court provided that they had the same access to the easement as appellees. They contend the July 2005 decision contradicts this finding.
 {¶ 49} The March 2004 decision makes the following pertinent findings and conclusions:
 {¶ 50} "The Magistrate finds that a 25-foot right of way exists between the private drive known as Orchard Place and the waters of Lake Milton for the benefit of the remaining lands owned by H. Augusta Jones in 1914. All of the parties have acquired their respective properties, as successors in interest to the lands once owned by H. August[a] Jones reserving riparian rights described by the restrictive covenant contained within the 1914 conveyance of lands to the City of Youngstown, successor in interest to the State of Ohio, Department of Natural Resources."
 {¶ 51} The July 2005 decision adopted by the trial court stated that appellants do not have property rights allowing them to use the 25-foot private drive. The magistrate explained this apparent inconsistency. The magistrate stated that "some confusion regarding Defendants' right to utilize the private drive was inspired by the previous Magistrate's Decision." Thus, the magistrate allowed further evidence and testimony to clarify the rights of the parties. Appellees offered evidence and testimony to show the difference between the general easement granted to all successors to pass over public land to access the lake, and the specific 25-foot easement for their benefit only. In light of this clarifying evidence, the magistrate decided that appellants have a general easement to cross public land, but do not have rights to the specific 25-foot easement in question. Thus, the magistrate's July 2005 decision did not contradict the March 2004 decision, but rather clarified the rights of the parties.
 {¶ 52} Furthermore, it seems that whether appellants have access to the right-of-way is not essential here. Even if appellants had access to the right-of-way, this would not permit them to block appellees' access.
 {¶ 53} Second, appellants assert that the March 2004 decision contradicted the July 2005 decision concerning whether the improvements they made were to stay in place. They allege that the March 2004 decision stated that their improvements were to remain intact.
 {¶ 54} The March 2004 decision stated that "it is in the interest of all parties and the public that the improvements remain in place to the extent a remedy can be fashioned to also provide access to the lake." The decision also scheduled another hearing. It instructed the parties that at the hearing, they were to present evidence as to possible means to access the lake through the right-of-way.
 {¶ 55} The July 2005 decision stated that "[t]he entire construction of rock slopes and retaining walls, including concrete slabs, rocks and monoliths, are to be removed from within the 25-foot right of way."
 {¶ 56} The March 2004 and July 2005 decisions are not inconsistent in this respect. Appellants did not present any evidence or testimony to provide a remedy that allowed the improvements to remain in place and also allow access to the lake. Appellees, on the other hand, presented evidence and testimony to show that the only reasonable way they can access the lake is to remove the construction. Therefore, based on the evidence, no remedy can be fashioned to allow the improvements to remain in place and also allow access to the lake. Thus, the July 2005 decision did not contradict the March 2004 decision in this respect.
 {¶ 57} Third, appellants assert that the March 2004 decision contradicted the July 2005 decision concerning whether appellees should be allowed any better access to the lake than they had prior to the construction. Appellants argue that the July 2005 decision gives appellees easier access to the lake than they had prior to the construction.
 {¶ 58} The March 2004 decision provided that appellees "are entitled to no easier access to the lake than existed prior to the encroachment upon the right of way" by appellants.
 {¶ 59} Before the construction, Hohnhorst described the land as "a rather steepish slope from the top to the bottom with a small terrace at the bottom, but it was covered in bushes and grasses." The July 2005 decision ordered appellants to remove the construction from within the 25-foot right of way, reshape and regrade the slope to fit as one slope, and mat and reseed the earth. After the construction is removed and the land is reshaped and reseeded, appellees will seem to be in the same position that they were in before the construction. In other words, after appellants perform the necessary work ordered by the trial court, appellees will be able to access the lake by way of a steepish slope covered in vegetation. This seems to be comparable to the access to the lake that appellees enjoyed before the right of way was obstructed. Therefore, the July 2005 order to remove the obstructions and restore the land gives appellees no better access to the lake than they had prior to the construction. Thus, the July 2005 decision did not contradict the March 2004 decision.
 {¶ 60} Based on the above analysis, the March 2004 decision is consistent with the July 2005 decision. Accordingly, appellant's second assignment of error is without merit.
 {¶ 61} For the reasons stated above, the trial court's judgment is hereby affirmed in all respects.
Waite, J., concurs.
DeGenaro, J., concurs in judgment only. See concurring in judgment only opinion.