COLEMAN et al., Appellants,

v.

PENNDEL COMPANY et al., Appellees.

[Cite as *Coleman v. Penndel Co.* (1997), 123 Ohio App.3d 125.]

Court of Appeals of Ohio,
Seventh District, Monroe County.

No. 778.

Decided Sept. 29, 1997.

*L. Kent Riethmiller*, for appellants.

*James W. Peters*, for appellees.

---

Cox, Judge.

This matter presents a timely appeal from a decision rendered by the Monroe County Common Pleas Court on an amended complaint for declaratory judgment, whereby the trial court found that plaintiffs-appellants, Alma Coleman et al., did not prove all the essential elements of adverse possession or, alternatively, prescriptive easement against defendants-appellees, Penndel Company et al.

On September 29, 1995, appellants, Alma and Bernard Coleman, brought a complaint for declaratory judgment against appellees, Penndel Company and Westbank Harbor Services, over a disputed parcel of real estate located in Section 20, Township 2, Range 3, Ohio Township, Monroe County, Ohio (an area lying between State Route 7 and the Ohio River).

In the original complaint for declaratory judgment, appellant, Bernard Coleman ("Bernard"), stated that he was the owner of a 3.75-acre parcel of real estate located in Section 20, Township 2, Range 3, Ohio Township. The complaint also stated that appellant, Alma Coleman ("Alma"), was the owner of a 32.68-acre parcel of real estate located in the same section, township and range. Appellants claimed that appellee Penndel Company ("Penndel") acquired a portion of the original acreage owned by appellants' predecessors in title. Appellants further

maintained that appellee Westbank Harbor Services ("Westbank") was the record owner of approximately 10.06 acres lying to the north and east of the acreage owned by appellants in the same section, township, and range as described above.

The thrust of this litigation is centralized around the respective rights of the parties to a portion of acreage lying on the east side of State Route 7 and lying between the parcels owned by Penndel to the south and by Westbank to the north. On February 21, 1996, appellants filed an amended complaint for declaratory judgment to reflect that Westbank had acquired 3.3 acres of land from Penndel, instead of 10.06 as originally stated in the initial complaint and, further, to specifically include the elements necessary for adverse possession or, alternatively, prescriptive easement.

The property in dispute had originally been owned by Nellie Coleman, grandmother of Bernard. By warranty deed dated March 7, 1953, Nellie Coleman conveyed that property to the parents of Bernard, who in turn conveyed a portion of the property to Bernard. Thereafter, on August 19, 1957, appellants conveyed the disputed property by warranty deed to Penndel. The warranty deed provided:

"IT BEING the intention of the Grantors herein to convey to the Grantee herein all the property they own, between Ohio State Route Number 7 and the low water mark of the Ohio River."

Penndel's successor in interest, Penn Central Corporation, subsequently conveyed the property to Westbank. The deed evidencing this subsequent conveyance read in pertinent part:

"Together with whatever rights the Grantor herein may have in and to any land or property lying between the above described parcels and the low water mark of the Ohio River."

On January 19, 1996, Westbank filed a motion for summary judgment. Appellants filed a motion in opposition. Westbank's motion was overruled by the trial court. On January 25, 1996, appellants filed a motion for default judgment, and the motion was likewise overruled by the trial court.

A bench trial was held on June 25, 1996, whereupon Bernard testified that the property between State Route 7 and the Ohio River had been used by his grandparents for fishing. He further testified that his family had always maintained and improved the boat dock located thereon. Bernard testified that in 1959 when the state built State Route 7, his father insisted that it build a roadway so he could more easily reach the boat dock. Bernard then testified that a dispute arose between himself and Westbank about the property in question when Westbank directed him to remove the boat dock.

Bernard testified that he responded to Westbank by offering that he was registered with the Coast Guard and the only one who could tell him to remove

the boat dock was the Coast Guard. Bernard further testified that there were disputes which arose regarding his usage of the area and Westbank's usage of the same area. Bernard stated that at one point Westbank volunteered to assist him in launching his boat from the dock by offering to cut about two feet off an area (ten feet wide) to make it easier for him to place his boat in the water.

On cross-examination, Bernard testified that upon Westbank's insisting that he remove his boat dock, they had a discussion and finally agreed that he could leave his boat dock there. Both Bernard and Westbank agreed that it would be fine as long as Bernard did not interfere with the operations at the boat dock. Witnesses called at trial on behalf of appellants testified to the fact that although they recognized the boat dock as belonging to appellants, many other individuals had also made use of the real property and the boat dock in question. One witness testified that he himself was allowed to use the dock for fishing from time to time. Another witness further testified that several friends had used the boat dock, especially a brother-in-law who used it constantly. He further testified that there were various fishermen who lived in the area who also used to go fishing in that area. On cross-examination, this same witness testified that anyone who wanted to use the property simply used it.

The trial court held that appellants conveyed to Penndel the ownership of all the land between State Route 7 and the low-water mark of the Ohio River in fee simple on August 19, 1957. The trial court further held that appellants had conveyed the property by warranty deed and therefore could not claim possession of it by prescriptive easement or, alternatively, adverse possession. This appeal followed.

Appellants set forth three assignments of error on appeal which are similar in nature and will therefore be discussed together. They allege as follows:

"The trial court erred in finding that appellants had no prescriptive right to use the dock, the dock area, and roadway to the dock for the reason that appellee had consented to such usage.

"The trial court erred in finding that since appellants' predecessor had conveyed the disputed area by deed to appellee that appellants' usage could not reach the level of adverse possession for prescription.

"The trial court erred in finding that appellee's alleged consent terminated any claim that appellants may make of acquisition of rights by adverse possession or prescription."

To prevail on a claim for adverse possession, a claimant must establish by a preponderance of the evidence that his possession of the land was open, notorious, exclusive, adverse, hostile and continuous for more than twenty-one years. *Demmitt v. McMillan* (1984), 16 Ohio App.3d 138, 16 OBR 146, 474

N.E.2d 1212. Similarly, in order to establish an easement by prescription, a claimant must show, by clear and convincing evidence, a use of the disputed property that is open, notorious, adverse, and continuous for twenty-one years. *J.F. Gioia, Inc. v. Cardinal Am. Corp.* (1985), 23 Ohio App.3d 33, 23 OBR 76, 491 N.E.2d 325. If the use is either by permission or accommodation for the owner, then it is not adverse. *Hindall v. Martinez* (1990), 69 Ohio App.3d 580, 591 N.E.2d 308.

■ Given the foregoing, appellants have the burden of proving by either the preponderance of the evidence or by clear and convincing evidence, depending upon whether the claim is one of adverse possession or easement by prescription, that their use of the disputed property was adverse for twenty-one years. Appellants must establish a prima facie case of adverse use before appellees are required to rebut appellants' claim. *Goldberger v. Bexley Properties* (1983), 5 Ohio St.3d 82, 84, 5 OBR 135, 137–138, 448 N.E.2d 1380, 1382–1383. However, if the owner of the property in question claims that the use was permissive, the owner has the burden of proving it. *Pavey v. Vance* (1897), 56 Ohio St. 162, 46 N.E. 898.

■ Where an alleged error is based upon the weight of the evidence, we will not reverse the judgment of the trial court as long as it is supported by some competent, credible evidence. *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 560 N.E.2d 765.

■ It is clear from the record that appellants did not establish all of the elements necessary to satisfy an adverse possession or, alternatively, a prescriptive easement. Bernard testified that he had permission from Westbank to use the disputed property. Therefore, the use was not adverse. Appellants argue that they had a right to use of the boat dock, dock area, and roadway by virtue of prescription. Appellants also assert that they maintained the roadway which extended from State Route 7 to the boat dock.

Appellants urge that they were not required to establish a heated controversy or manifestation of ill will. In support, appellants cite *Kimball v. Anderson* (1932), 125 Ohio St. 241, 244, 181 N.E. 17, 18, wherein the Ohio Supreme Court stated that to establish hostility, it is not necessary to show that there was a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner, as hostility might vary greatly in different cases. It is sufficient if the use is inconsistent with the rights of the title owner and not subordinate or subservient thereto.

Appellants contend that their usage of the boat dock was certainly inconsistent with the rights of Westbank. Appellants also assert that their use of the boat dock was on a continuous basis which was clearly visible to others, thereby

indicating that they established the elements of open and notorious in a manner sufficient to satisfy the elements of adverse possession. Appellants initially believed that they were the true record owners of the property in question and had legal title to the property. Only later did appellants come to realize that a warranty deed had conveyed the disputed property.

A party claiming a prescriptive easement has the responsibility of proving each element by a heightened burden, that of clear and convincing evidence. *McInnish v. Sibit* (1953), 114 Ohio App. 490, 19 O.O.2d 476, 183 N.E.2d 237. In accordance with *Monroe Bowling Lanes v. Woodsfield Livestock Sales* (1969), 17 Ohio App.2d 146, 152, 46 O.O.2d 208, 212, 244 N.E.2d 762, 766, "Permissive use cannot ripen into an easement by prescription no matter how long continued." At trial, Bernard testified that Westbank agreed he could leave his boat dock where it was. More important, Bernard further testified, "I wanted to keep my boat in the river and everything else, and she said something about getting an agreement made up or something, that I could go ahead and have a right of way to that dock."

In the instant case, appellants conveyed the property in question to Penndel. The deed clearly reflected that appellants had every intention of giving up control of the property. As previously stated, the deed provided in pertinent part:

"IT BEING the intention of the Grantors herein to convey to the Grantee herein all the property they own between Ohio State Route Number 7 and the low water mark of the Ohio River."

The trial court noted:

"Though the Plaintiffs have used a portion of said property for a boat dock and for access to the boat dock, that use has been permissive in nature by the owners of the property and, therefore, does not reach the level of hostile use as required under the Doctrine of Adverse Possession. Testimony was presented to the Court that the owner of West Bank Harbor Service, Inc. did, at one time, provide bulldozer services to the Plaintiff to prepare a boat loading ramp. The Plaintiff, Bernard C. Coleman, testified that in late 1989 or in early 1990, Mrs. Mainknecht, contacted him and requested that he remove his boat dock and boat because they intended to use the area for loading and unloading coal barges. The Plaintiff, Bernard C. Coleman, stated that he offered to work something out with Mr. and Mrs. Mainknecht in order to allow him to continue to use the area." (Judgment Entry dated June 25, 1996).

We agree with the trial court that appellant did have permission to use the disputed property. Therefore, several of the essential elements necessary to support title by adverse possession or prescriptive easement are missing.

Concerning the issue of adverse possession and the conveyance of the disputed property by warranty deed to Penndel, it is clear that continued open and notorious use by a grantor will be deemed adverse to the grantee only where it is of such a nature as to be totally inconsistent with the rights of the grantee. *Rosenstihl v. Cherry* (1926), 114 Ohio St. 401, 151 N.E. 642. However, that is not the situation in this case as it was established at trial that Penndel had obtained the disputed property for purposes of locating a railroad track. The proposed railroad track was never constructed, and the titled owners of the property in question made absolutely no use of it for almost thirty years. The use by appellants' family was not, therefore, inconsistent with the rights of the owner.

Based upon a thorough review of the record and transcript, we agree with the trial court that the agreement between the parties was permissive in nature and that not all of the elements necessary for a claim of adverse possession or prescriptive easement were met. Therefore, appellant's first, second, and third assignments of error are without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.